**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIYEIRA NICHOLSON** | : | |
| | : | **Civil Action** |
| **Plaintiff** | : | **No.** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | **JURY TRIAL DEMANDED** |
| **DEPARTMENT OF PRISONS** | : | |
| | : | |
| **Defendant** | : | |

**CIVIL ACTION COMPLAINT**

**I.     PRELIMINARY STATEMENT**

1.     This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, KIYEIRA NICHOLSON. Plaintiff was an employee of Defendant, CITY OF PHILADELPHIA DEPARTMENT OF PRISONS, who has been harmed by Defendant's discriminatory employment practices.

2.     This action arises under Title VII of the Civil Rights Act of 1964, as amended, Pub. L. 88-352 ("Title VII"), the Pennsylvania Human Rights Act ("PHRA"), 43 P.S. § 951, and the Philadelphia Fair Practices Ordinance ("PFPO").

**II.     JURISDICTION AND VENUE**

3.     The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. § 1331, as Plaintiff's claims are substantively based on Title VII of the Civil Rights Act of 1964 ("Title VII").

4.     The Eastern District of Pennsylvania has general jurisdiction over the Defendant, and specific jurisdiction over this matter as the events giving rise to Plaintiff's claims occurred in the Eastern District.

**III.     PARTIES**

5.     The Plaintiff herein is Kiyeira Nicholson, an adult individual residing in Philadelphia, Pennsylvania.

6.     The Defendant herein is the City of Philadelphia Department of Prisons, a local government agency existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 7901 State Road, Philadelphia, PA 19136.

7.     At all times material and relevant to this complaint, Defendant was acting by and through its agents, servants, workers, employees, and/or representatives who were acting within the course and scope of their employment and/or agency with said Defendant. At all times material herein, Defendant is a "person" and "employer" as defined under Title VII of the Civil Rights Act of 1964, as amended. At all times material herein, Defendant is an employer as defined by the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.

**IV.     ADMINISTRATIVE EXHAUSTION**

8.     On July 2, 2025, Plaintiff timely filed a Charge of Discrimination on the basis of sex discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Philadelphia Commission on Human Relations .

9.     The case was investigated by the EEOC.

10.     On April 23, 2026, the EEOC issued a Determination and Notice of Rights.

11.     As such, the administrative remedies for Plaintiff's claims have been exhausted.

**V.     UNDERLYING FACTS**

12.     Plaintiff was hired by Defendant as a Correctional Officer at the Curran-Fromhold Correctional Facility ("CFCF") beginning on or about October 13, 2022.

13.     At all times relevant to this complaint, Plaintiff was qualified for her job and performed it well.

14.     On or about August 13, 2024, Plaintiff arrived to work for her regular shift.

15.     After going through the security scanner as usual, Plaintiff was pulled aside by one of her supervisors and into a room with that supervisor and two other corrections officers, where Plaintiff was made to wait for 30 minutes without explanation.

16.     After 30 minutes had passed, Plaintiff was escorted back into the lobby, where she was met by four more supervisors and a union representative, after which Plaintiff was escorted into the office of one of her supervisors.

17.     At that time, Plaintiff expressed an urgent need to use the restroom and was told that she would have to "pee in the trashcan," which Plaintiff was eventually forced to do.

18.     After being humiliated by being forced to urinate into a trashcan in front of others, Plaintiff's supervisors then ordered her to be subjected to a strip search.

19.     Plaintiff was forced to remove all of her clothes, squat down, and cough with three other people in the room, while additional corrections officers and drug-sniffing dogs were waiting outside of the room where this was occurring.

20.     Plaintiff continually inquired as to the reason for the search but did not receive an answer.

21.     After the strip search, Plaintiff's manager proceeded to search Plaintiff's locker and car.

22.     Both the strip search and the search of Plaintiff's locker and car revealed no contraband.

23.     After these humiliating searches were completed without explanation, Plaintiff was ordered to return to work.

24.     In addition to their failure to provide an explanation to Plaintiff, Defendant also failed to provide an apology to Plaintiff when their humiliating and degrading searches came up empty.

25. Plaintiff's manager then pulled Plaintiff aside and disclosed to her that the x-ray generated by the security scanner revealed that "something" inside of Plaintiff's body had "expanded", leading to a suspicion that she was attempting to smuggle drugs into the prison.

26. Plaintiff then asked why she was not sent to a doctor to make sure there were no medical issues once Defendant's searches turned up empty but did not receive a clear answer.

27. Plaintiff then told one of her supervisors that she did not feel comfortable continuing her shift and left CFCF for the day.

28. The next day, August 14, 2024, Plaintiff went to the hospital to get an x-ray done, which revealed no contraband and that nothing in Plaintiff's body was expanded or out of place.

29. On August 19, 2024, Plaintiff requested to be transferred to another of Defendant's facilities because she did not feel comfortable returning to an environment where she had been subjected to a humiliating and degrading strip search without cause or explanation.

30. Plaintiff also informed Defendant that due to this extreme harassment that she had faced at CFCF, she would not be returning to work until Defendant granted her transfer to another facility.

31. After not hearing back from Defendant for approximately two months, Plaintiff reached out to Defendant about the status of her transfer and was told she had to re-apply for a position with Defendant because Defendant wrongfully claimed that Plaintiff had abandoned her position.

32. By wrongfully asserting that Plaintiff had abandoned her position, Defendant wrongfully terminated Plaintiff from her position.

33. Alternatively, Defendant constructively discharged Plaintiff when it subjected her to working conditions which were so unbearable that any reasonable employee would feel forced to leave their position.

34.     Plaintiff proceeded to ask for any formal records or statements around the strip search she was subjected to and Defendant denied those requests.

35.     Plaintiff was discriminated against based on her sex by being subjected to a humiliating and degrading strip search with no explanation and by being subsequently terminated from her position, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance.

36.     Additionally, Plaintiff was retaliated against for engaging in a protected activity in violation of the aforementioned statutes.

### COUNT I
**Violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance**

37.     Plaintiff repeats and re-alleges the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

38.     Defendant, by and through its agents and employees, subjected Plaintiff to discrimination and harassment on the basis of her sex.

39.     Specifically, Plaintiff was discriminated against and harassed when she was forced to urinate into a trashcan in front of others and was then forced to undergo a strip search without explanation or apology when the search proved fruitless.

40.     Plaintiff was also discriminated against when Defendant terminated Plaintiff and wrongfully claimed that Plaintiff had abandoned her position when she had instead simply requested a transfer.

41.     Alternatively, Plaintiff was discriminated against when she was constructively discharged by Defendant due to the unbearable nature of the harassment at CFCF.

42.     As a direct result of the actions and/or conduct of Defendant, Plaintiff suffered serious and continuing damages and injuries, including, but not limited to, loss of income, benefits, damage to her reputation, and emotional pain and suffering.

43.     Defendant, along with its upper-level managers and supervisors, violated Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance through the aforementioned conduct.

## COUNT II
### Retaliation Under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance

44.     Plaintiff repeats and re-alleges the allegations set forth in all previous paragraphs of this Complaint as if they were set forth in full herein.

45.     Plaintiff engaged in protected activity when she requested to be transferred away from CFCF and to another prison within Defendant's organization on August 19, 2024, due to the discrimination and harassment she had faced at CFCF.

46.     Plaintiff also engaged in protected activity when she informed Defendant that she could not return to work until she was transferred to a different facility.

47.     Defendant took adverse action against Plaintiff when it terminated Plaintiff from her position, or alternatively, when it constructively discharged her from her position by failing to grant her request for a transfer.

48.     As a direct result of the actions and/or conduct of Defendant, Plaintiff suffered serious and continuing damages and injuries, including, but not limited to, loss of income, benefits, damage to her reputation, and emotional pain and suffering.

49.     Defendant violated Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance when it retaliated against Plaintiff because she engaged in a protected activity.

**WHEREFORE**, Plaintiff respectfully requests back pay, front pay, emotional distress damages, compensatory damages, and punitive damages against Defendant, in excess of $75,000, together with costs, interest, and other relief that the Court may deem appropriate under the circumstances.

**MALAMUT & ASSOCIATES, LLC**

Date: July 22, 2026

*/s/ Christian J. Hoban*
Christian J. Hoban, Esq. - 331794
Mark R. Natale, Esq. – 316939
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
856-424-1808
856-424-2032 (f)
christian@malamutlaw.com
mnatale@malamutlaw.com
*Attorneys for Plaintiff, Kiyeira Nicholson*